UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/26/2023
```

RAQUEL GARCIA, individually and on behalf of all others similarly situated,

     Plaintiff,

-against-

JANUS HOMECARE AGENCY, INC., HAPPY LIFE HOME HEALTH AGENCY INC., CUPID HOMECARE AGENCY, LLC, and MICHAEL PAGAN,

     Defendants.

1:23-cv-3321 (MKV)

ORDER GRANTING MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION OF NOTICE

MARY KAY VYSKOCIL, United States District Judge:

  Plaintiff Raquel Garcia brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL") against Defendants Janus Homecare Agency, Inc. ("Janus"), Happy Life Home Health Agency, Inc. ("Happy Life"), Cupid Homecare Agency, LLC ("Cupid Homecare"), and Michael Pagan, owner of the Corporate Defendants. First Amended Complaint [ECF No. 30] ("FAC"). Plaintiff seeks to recover: (1) unpaid overtime premiums, (2) unpaid wages, including overtime due to improper rounding, (3) late payment of wages, (4) statutory penalties, and (5) liquidated damages. Plaintiff seeks conditional collective certification for claims under the FLSA on behalf of herself and all current and former non-exempt employees, including but not limited to, home attendants, home health aides, personal care assistants, intake coordinators, nurses, and nursing assistants employed by Defendants within the six years prior to the filing of the original Complaint in this action. *See* Plaintiff Memorandum of Law in Support [ECF No. 24] ("Pl. Br.") at 1. The motion is not opposed. For the reasons discussed below, Plaintiff's Motion is GRANTED.

## BACKGROUND

Defendants operate a home health care business that assigns home care attendants and other personnel to the homes of Defendants' clients to provide services for the elderly and disabled. FAC ¶ 6. Plaintiff was formerly employed by Defendants to work as a home attendant from in or around May 20, 2020 through February 27, 2023. FAC ¶ 28. Her duties as a home attendant involved meal preparation, housekeeping, personal care, feeding, and physically moving clients. FAC ¶ 34. Plaintiff alleges that her duties required "manual tasks" for nearly her entire shift, spending "far more than 25% of her working time" engaged in physical labor. FAC ¶ 34. Plaintiff further alleges that she was paid on a bi-weekly basis, despite being a "manual laborer," which requires paid wages on a weekly basis under New York law. FAC ¶ 34.

Plaintiff alleges that she and all non-exempt home attendants, home health aides, personal care assistants, intake coordinators, nurses and nursing assistants employed by Defendants "are and have been similarly situated, have had substantially similar job requirements and pay provisions." FAC ¶ 18. She claims that throughout her employment with Defendants, she regularly observed and spoke to her co-workers about Defendants' pay practices and policies. FAC ¶ 33. Based on her direct observations and conversations with other employees, Plaintiff alleges that she and all potential opt-in plaintiffs were subjected to the same "decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules." FAC ¶ 18, 33.

Plaintiff alleges that at all relevant times, she and potential opt-in plaintiffs were improperly paid at their regular hourly rates for their overtime hours, instead of receiving the proper overtime premiums. FAC ¶ 31. Additionally, Plaintiff alleges that throughout her entire period of employment, for each shift, Defendants rounded Plaintiff's clock in and clock out times to her scheduled shifts, instead of her actual hours worked. FAC ¶ 32. This policy of rounding allegedly resulted in Plaintiff being compensated for less than the hours she actually worked.

FAC ¶ 32.  Plaintiff alleges that potential opt-in plaintiffs were also subject to Defendants' policy for unlawful rounding.  FAC ¶ 32.  Finally, Plaintiff alleges that Defendants never provided her and potential opt-in plaintiffs with proper wage notice and statements, which, if received, would have allowed them the opportunity "to determine whether they were underpaid or not."  FAC ¶ 41.

Plaintiff alleges that Defendants' unlawful wage practices "ultimately led to Plaintiff [] struggl[ing] to pay bills and debts and make other necessary purchases."  FAC ¶ 41.  Allegedly, potential opt-in plaintiffs similarly suffered comparable monetary injury from Defendants' violations.  FAC ¶ 41.

## **LEGAL STANDARD**

The Second Circuit has implemented a two-step process to certify collective actions under the FLSA.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  During the initial step, the Court must make a determination about whether notice to potential opt-in plaintiffs should be sent.  *Id*.  At the second stage, the district court will, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id*.  "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Id*.  However, "the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  *Id*.

During the initial step for conditional certification, Plaintiff must make a "modest factual showing" that she and other potential opt-in plaintiffs are similarly situated.  *Myers*, 624 F.3d at 555; *see also Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015).  Plaintiff must show that she and any potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555; *Bittencourt*, 310 F.R.D. at 11.  Moreover, Plaintiff must demonstrate that they are similarly situated "not only with respect to the

3

employer's conduct toward them, but also in their job responsibilities." *Cunningham v. Electronic Data Systems Corp.*, 754 F. Supp. 2d 638, 648 (S.D.N.Y. 2010) (applying *Myers*). In other words, Plaintiff needs to have "some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions.' " *Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014).

"The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555. The court must be able to identify some "factual nexus which binds [Plaintiff] and potential class members together." *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 702 (S.D.N.Y. 2018) (internal quotation marks omitted). When evaluating Plaintiff's pleadings during this preliminary stage "the court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014); *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Indeed, a court "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch*, 491 F. Supp. 2d at 368; *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (Sotomayor, D.J.) ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.").

At bottom, while conditional certification is not automatic, and while a plaintiff's showing in support of certification cannot be entirely conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05-cv-2349, 2006 WL 278154, at *2–3 (S.D.N.Y. 2006), courts have recognized that the standard at this first stage is " 'fairly lenient,' [and thus] courts applying it 'typically grant[ ] conditional

4

certification.' " *Amador v. Morgan Stanley & Co.*, No. 11-cv-4326, 2013 WL 494020, at *3 (S.D.N.Y. 2013) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-cv-332, 2009 WL 1585979, at *2 (S.D.N.Y. 2009)).

## ANALYSIS

### I. PLAINTIFF HAS SATISFIED THE MODEST FACTUAL SHOWING REQUIRED FOR CONDITIONAL CERTIFICATION

#### A. Plaintiff Has Adequately Pled That Defendants Operate as a Single, Integrated Enterprise for Purposes of Conditional Certification

Plaintiff adequately alleges that Defendants own and operate a home health care business in New York City as a single, integrated enterprise through the named Corporate Defendants within the meaning of the FLSA. FAC ¶ 7. The FLSA provides that the term "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed *in one or more establishments* . . . ." 29 U.S.C. § 203(r) (emphasis added). The three elements to be satisfied are (1) related activities, (2) common control and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.).

As alleged, Defendant Janus handles payroll and human resources. FAC ¶ 7, Ex. B. Defendant Cupid Homecare oversees providing employees' retirement plans, among other functions. FAC ¶ 7, Ex. C. Defendant Happy Life is the face of Defendants' homecare services business, and handles the day-to-day business operations, including sending out staff to the homes of Defendants' clients to provide home care services. FAC ¶ 7, Ex. D. Individual Defendant Michael Pagan is an owner of the Corporate Defendants and exercises operational control as it relates to all employees. FAC ¶ 11. Moreover, the Corporate Defendants allegedly maintain centralized payroll, human resources, and administrative departments. *See* Declaration of Raquel

Garcia [ECF No. 27] ("Garcia Decl.") ¶ 14.  The Corporate Defendants also maintain the same phone number, websites, and social media.  Pl. Br., Ex. E.

In sum, when accepted as true, Plaintiff sufficiently alleges that the Corporate Defendants operate as a single, integrated enterprise within the meaning of the FLSA.  *See, e.g.*, *Yanza v. ST Group LLC*, No. 16-cv-8834, at ECF No. 60 (S.D.N.Y. 2017) (granting preliminary conditional certification of employees at three restaurants, finding the plaintiff's declaration and preliminary evidence to be "sufficient, when taken as true, to satisfy the modest factual showing" for enterprise-wide conditional certification); *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-cv-601, 2016 WL 6561302, at *8 (S.D.N.Y. 2016) ("The fact that Plaintiff worked at only five Chipotle locations [out of sixty] is not dispositive of the issue of citywide certification—what matters is whether he and employees at those restaurants were 'similarly situated' with respect to the FLSA violations alleged in the complaint.") (internal citations and quotation marks omitted); *Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14-cv-2848, 2015 WL 1514950, at *3–4 (S.D.N.Y. 2015) (certifying collective action across multiple restaurant locations based on one employee's affidavit testifying to common ownership and personal conversations with employees who rotated among different locations).

### B. Plaintiff Satisfies the Modest Factual Showing That She is Similarly Situated to Potential Opt-in Plaintiffs for Purposes of Conditional Certification

"Neither the FLSA nor its implementing regulations define 'similarly situated.' " *Perez Perez v. Escobar Constr., Inc.*, 540 F.Supp.3d 395, 403 (S.D.N.Y. 2021) (citing *Sbarro*, 982 F. Supp. at 261).  Courts in this Circuit have held that named plaintiffs can meet their burden by making a modest factual showing demonstrating that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.  *Myers*, 624 F.3d at 554–55.  Indeed, the relevant question "is not whether [the] [p]laintiffs and [potential opt-in members are] identical

6

in all respects, but rather whether they were subjected to a common policy." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011) (internal quotation marks and citation omitted), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013); *see also Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013); *Sbarro*, 982 F. Supp. at 261. "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" because the Court may later, after having the benefit of full discovery, "decertify the class or divide it into subclasses, if appropriate." *Lynch*, 491 F. Supp. 2d at 369.

Here, taking the allegations as true, Plaintiff satisfies the modest factual showing that she and the potential opt-in plaintiffs are similarly situated. In the First Amended Complaint, Plaintiff alleges that she and all non-exempt home attendants, home health aides, personal care assistants, intake coordinators, nurses, and nursing assistants employed by Defendants "have had substantially similar job requirements and pay provisions." FAC ¶ 18. She further alleges that throughout her employment with Defendants, she regularly observed and spoke to her co-workers about Defendants' pay practices and policies. FAC ¶ 33. Based on her direct observations and conversations with other employees, Plaintiff alleges that she and all potential plaintiffs were subject to the same "decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules." FAC ¶ 18, 33. The Court observes that these allegations are verging on conclusory. It is hard to comprehend that employees in six different positions, by Plaintiff's own allegations, have similar job responsibilities. But, given the modest factual showing required at this stage, the Court finds Plaintiff's allegations sufficient for now, subject of course to decertification or division into subclasses based on discovery.

Plaintiff's allegations are further corroborated by her detailed declaration submitted in connection with this motion, which includes specific factual allegations that support Plaintiff's understanding that she and Defendants' other employees were subject to the same wage practices

and policies. *See e.g.*, Garcia Decl. ¶¶ 6, 7, 11; *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-cv-0265, 2012 WL 1981507, at *1 (S.D.N.Y. 2012) (conditional collective certification granted based on a single employee's affidavit alleging that she and other employees who performed work "similar" to hers were paid less than the statutory minimum and not compensated for overtime); *Jeong Woo Kim*, 985 F. Supp. 2d at 449; *Bowens v. Atlantic Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (conditional certification granted despite lack of any corroborating evidence other than employee's own affidavit). Specifically, Plaintiff identifies four employees by name whom she spoke with "regularly" regarding Defendants' wage practices. Garcia Decl. ¶ 6. Additionally, she states that "every few months" at a mandatory "in-service" meeting, Plaintiff would "gather with around thirty of [her] co-workers" and have conversations with them, where "it was common knowledge that Defendants engaged in" wage rounding and unpaid overtime premiums. Garcia Decl. ¶ 6.

Accordingly, at this stage, Plaintiff has satisfied the modest factual showing that she is similarly situated to all current and former non-exempt home attendants, home health aides, personal care assistants, intake coordinators, nurses, and nursing assistants employed by Defendants throughout the duration of her employment.[1]

## II.   SCOPE AND FORM OF COURT AUTHORIZED NOTICE

Once a court determines that a plaintiff has demonstrated that she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful wage policy, and has thus satisfied her burden for initial certification of a collective action, the court may

---

[1] In Plaintiff's motion she seeks conditional certification for claims under the FLSA "on behalf of herself and all current and former non-exempt employees, ***including but not limited to***, home attendants, home health aides, personal care assistants, intake coordinators, nurses, and nursing assistants employed by Defendants." Pl. Br. at 1 (emphasis added). However, "all current and former non-exempt employees," regardless of position, can broadly cover administrative employees, executive employees, and other roles that are not similarly situated to Plaintiff as a former home attendant. As such, the Court limits Plaintiff's conditional certification to the categories of employees she explicitly lists in her motion.

8

proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit. *Lynch*, 491 F. Supp. 2d at 367. "Although Section 216(b) does not explicitly address court-authorized notice, 'it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs.' " *Grant v. Warner Music Grp. Corp.*, No. 13-cv-4449, 2014 WL 1918602, at *2 (S.D.N.Y. 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (internal quotation marks and additional citations omitted).

### A. Appropriate Notice Period

Plaintiff argues that an opt-in notice period of six years prior to the filing of the original Complaint is appropriate because the "state law claims have a six-year limitations period." Pl. Br. at 22. Plaintiff cites no Second Circuit case law, or Southern District of New York case law, to support her position. Instead, Plaintiff cites an unreported case from the Eastern District of New York holding that "*in some circumstances* where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims." *See Garriga v. Blonder Builders Inc.*, 2018 WL 4861394 (E.D.N.Y. 2018). The Court declines to adopt this position. Because Plaintiff's federal FLSA claims (if proven to be willfully committed by Defendants) have a three-year limitations period, an opt-in notice period of three years prior to the filing of the original Complaint is appropriate in this case. *See Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.").

Therefore, the Court grants Plaintiff conditional collective certification for claims under the FLSA on behalf of herself and all current and former non-exempt home attendants, home health

aides, personal care assistants, intake coordinators, nurses, and nursing assistants employed by Defendants within the *three* years prior to the filing of the original Complaint in this action.

### B. Appropriate Opt-In Period

Plaintiff's Proposed Notice of Pendency provides for a 90-day opt-in period for potential plaintiffs who may wish to join the collective. In similar FLSA cases, this District has approved a 60-day opt-in period, which this Court finds more appropriate here. *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-cv-8228, 2016 WL 3020933, at *7 (S.D.N.Y. 2016) (finding that a 30-day opt-in period was too short "to effect [n]otice on the potential opt-in plaintiffs"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451–52 (S.D.N.Y. 2011) (collecting cases).

### C. Language of Notice

Plaintiff requests that the final approved notice be in English and Spanish, given that many of the prospective plaintiffs in this case are native Spanish speakers. Pl. Br. at 23. This type of request has been granted in other cases, *see, e.g.*, *Iriarte v. Cafe 71, Inc.*, No. 15-cv-3217, 2015 WL 8900875, at *6 (S.D.N.Y. 2015) (citing *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007)); *see also Castillo v. Perfume Worldwide Inc.*, No. 17-cv-2972, 2018 WL 1581975, at *15 (E.D.N.Y. 2018) (finding that, in light of broad remedial purpose of FLSA, translating a notice into Spanish was appropriate), and this Court finds it reasonable and appropriate in this case to increase the effectiveness of the notice in reaching potential opt-in plaintiffs. Accordingly, Plaintiff is granted leave to send out notice of the collective action in both English and Spanish.

### D. Equitable Tolling

Plaintiff also requests that the applicable FLSA statute of limitations be tolled[2] until such time that Plaintiff is able to send notice to potential opt-in plaintiffs. In support of her argument, Plaintiff contends that "District Courts in this and other Circuits have increasingly granted a plaintiff's request for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of these types of cases." Pl. Br. at 23. The only cases that Plaintiff cites in support are cases in which the "[certification] motion has been pending for several months" and to "account for the time period needed for the court to issue a ruling on the conditional certification motion." *See e.g.*, *Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-cv-2967, 2020 WL 2832776, at *10 (S.D.N.Y. 2020); *Cabrera v. Stephens*, 2017 WL 4326511, at *7 (E.D.N.Y. 2017) (holding that equitable tolling was appropriate to account for the time period needed for the court to issue a ruling on the conditional certification motion).

Equitable tolling, however, is applicable only in "rare and exceptional circumstances." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)). Indeed, while some courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been *sub judice*, several courts have held that delay by the court in deciding the motion does not justify equitable tolling. *See Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017); *Mark v. Gawker Media LLC*, No. 13-cv-4347, 2014 WL 5557489, at *2 (S.D.N.Y. 2014) (declining equitable tolling where 11 months had passed since the filing of the motion for conditional certification, and finding that "the time

---

[2] The Court notes that Plaintiff's Memorandum of Law in Support of its motion requests "that the applicable FLSA statute of limitations ***not*** be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs." Pl. Br. at 23. The Court assumes that Plaintiff intended to ***request*** tolling.

11

delay between the date [p]laintiffs filed the motion and its resolution. . . was not extraordinary" (internal quotation marks omitted)).

Here, Plaintiff's motion for conditional certification was approximately one month ago. There has effectively been no gap between the time the motion was filed and the date of this decision. Moreover, Plaintiff has not demonstrated that the claims of any potential opt-in plaintiffs would actually be barred as the result of any delay occasioned by the Court or by the terms of the notice. *Whitehorn*, 767 F. Supp. 2d at 450. For these reasons, Plaintiff's request that this Court make a determination of equitable tolling is denied, without prejudice to the rights of potential opt-in plaintiffs to make a further application for tolling upon an appropriate showing of exceptional circumstances and the requisite diligence.

### E. Defendants are Ordered to Produce Contact Information for Potential Opt-In Plaintiffs

In order to facilitate the provision of notice, Plaintiff requests that Defendants produce a Microsoft Excel data file containing contact information, including the names, titles, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all potential members of the collective. Courts in this District "commonly grant" requests for the production of such information in connection with the conditional certification of an FLSA collective action. *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237, 2016 WL 30334, at *19 (S.D.N.Y. 2016); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10-cv-1145, 2010 WL 4340255, at *5 (S.D.N.Y. 2010) (noting that "courts often order the production of such information at the notice stage").

Plaintiff's request that Defendants be required to provide the requested information is granted, but, consistent with this Court's decision as to the appropriate scope of the collective, such production need only be made regarding potential opt-in plaintiffs who are current or former

employees of Defendants in the specific categories of positions Plaintiff lists in her motion and only during the three years prior to the filing of the original Complaint (April 20, 2020). The information may be provided by Defendants in any reasonably useable form.[3]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing Defendants to produce a list of contact information for potential members of the collective, is GRANTED. It is further ordered that on or before November 3, 2023, Plaintiff is directed to modify her Proposed Notice of Pendency in accordance with the rulings herein, and to resubmit it to this Court for approval. The Notice may direct that consent forms be returned to Plaintiff's counsel.

Within two weeks of the date of this Order, Defendants shall provide to Plaintiff's counsel the names, titles, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers for all current and former non-exempt home attendants, home health aides, personal care assistants, intake coordinators, nurses and nursing assistants employed by Defendants from April 20, 2020 to the present.

Once the Court approves Plaintiff's modified notice, Plaintiff's counsel may arrange to have it disseminated, in any relevant language, via mail, and via email and/or text messages, to all potential members of the collective.

---

[3] In her motion, Plaintiff also requests that "[i]n the event that the mailings to Covered Employees are returned as undeliverable and Covered Employees' name and contact information are insufficient to effectuate notice, Plaintiff seeks the social security numbers of such Covered Employees so that Plaintiff's counsel can perform a skip trace to obtain a valid address." Pl. Br. at 20. Plaintiff cites only one case from the Eastern District in support of this argument, *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267–68 (E.D.N.Y. 2005), which specifically required the use of a confidentiality agreement before requiring defendant to produce social security numbers of putative collective members. The Court denies without prejudice the request with respect to the social security numbers.

The Clerk of Court is respectfully requested to close docket entries 23 and 24.

**SO ORDERED.**

Date: **October 26, 2023**
      **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**